## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Carol Walsh,

        Plaintiff,

  v.                            **MEMORANDUM OPINION**
                                        **AND ORDER**
                                      Civil No. 09-3142 ADM/AJB

CEDA, Inc.,

        Defendant.

---

Adrianna Shannon, Esq., and Steven Andrew Smith, Esq., Nichols Kaster, PLLP, Minneapolis, MN, on behalf of Plaintiff.

Jill Kirila, Esq., and Traci L. Martinez, Esq., Squire, Sanders & Dempsey, LLP, Columbus, OH, and Stephen C. Rathke, Esq., Lommen, Abdo, Cole, King & Stageberg, PA, Minneapolis, MN, on behalf of Defendant.

---

## I.  INTRODUCTION

On February 24, 2011, the undersigned United States District Judge heard oral argument on Defendant CEDA, Inc.'s ("CEDA") Motion for Summary Judgment [Docket No. 16]. Plaintiff Carol Walsh ("Walsh" or "Plaintiff") opposes the motion.  Walsh asserts claims under Title VII of the 1964 Civil Rights Act ("Tile VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. Ch. 363A.  For the reasons set forth below, the motion is granted in part and denied in part.

## II.  BACKGROUND[1]

Defendant CEDA is in the business of industrial maintenance, providing services to oil refineries, petrochemical plants, utility plants, and pulp and paper operations.  Appendix Index to

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Def.'s Mot. for Summ. J. [Docket No. 19] Werkheiser Ex. 32 ("July 2009 Werkheiser Aff.") ¶ 2. CEDA operates two facilities in Minnesota, one in Ham Lake and one at the Flint Hills Refinery. See Appendix Index to Def.'s Mot. for Summ. J. Werkheiser Aff. ("November 2010 Werkheiser Aff.") ¶ 1. The Ham Lake facility has approximately thirty employees and provides industrial cleaning services for oil refineries and natural gas processing plants and similar operations. July 2009 Werkheiser Aff. ¶¶ 1, 2. The Flint Hills facility is a distinct entity with its own employees, and provides cleaning services to the Flint Hills Refinery, which is not owned by CEDA and employs workers of its own, through approximately eight employees with offices on site. November 2010 Werkheiser Aff. ¶¶ 3, 4. The number of employees at each site varies depending on workload. Id. ¶ 4; Werkheiser Ex. 32 ¶ 4. CEDA employs women exclusively in secretarial roles, with none working in the "field." See Werkheiser Dep. at 68. Plaintiff's husband Kevin Walsh ("Kevin") is employed by CEDA as a Field Supervisor at the Flint Hills facility. Shannon Aff. Ex. 21, Kevin Walsh Deposition ("Kevin Walsh Dep.") at 13.

In November 2007, after hearing that the Administrative Assistant position at Flint Hills was being vacated, Walsh submitted an application to CEDA for that position. Shannon Aff. Ex. 19, Carol Walsh Deposition ("Carol Walsh Dep.") at 66. Walsh filled out and submitted the application on site. Carol Walsh Dep. at 67. Although Nikki Pevito ("Pevito"), the Administrative Assistant at Flint Hills at the time, was considering leaving, Pevito did not actually resign and the position never became available. July 2009 Werkheiser Aff. ¶ 8.

In June or July 2008, Kevin obtained an application for a General Laborer position with CEDA for Walsh to fill out. Carol Walsh Dep. at 73. General Laborers perform miscellaneous manual labor at the direction of higher ranking employees. Shannon Aff. Ex. 22, James Lehrke

Deposition ("Lehrke Dep.") at 20-21.  The requirements for a General Laborer position are the ability to lift fifty pounds and willingness to travel; additionally, a commercial driver's license and good work history are preferred.  Shannon Aff. Ex. 20, Andrew Werkheiser Deposition ("Werkheiser Dep.") at 74.  Kevin believed a General Laborer position would be opening up to monitor the loss of equipment at the Ham Lake facility and to meet increased seasonal labor needs.  Carol Walsh Dep. at 73-74.

In late July or early August 2008 Walsh filled out the application and gave it to Kevin to be submitted.  Carol Walsh Dep. at 76-77.  Division Manager Andrew Werkheiser ("Werkheiser") is the person in charge of hiring at CEDA's Minnesota locations.  November 2010 Werkheiser Aff. ¶ 2.  Werkheiser has no recollection of seeing Walsh's application for a General Laborer position and never considered her for such a position.  Werkheiser Dep. at 33-34.  Pevito, however, states that she gave Kevin an application for Walsh, the application was returned, and she then forwarded the application through CEDA internal mail to Ham Lake.  Pevito Dep. at 14-16.  Pevito recalls that the application was for an opening as a General Laborer assigned to track protective equipment.  Id.  At Ham Lake, Administrative Assistant Cindy Voss ("Voss") recalls seeing an application filled out by Walsh coming from Flint Hills.  Shannon Aff. Ex. 26, Cindy Voss Deposition ("Voss Dep.") at 31.  However, Voss believes that the application was for an Administrative Assistant position. Id. at 32.

Walsh called Werkheiser several times to inquire about her General Laborer application.  See Werkheiser Dep. at 34-36.  Walsh admits, however, that she did not specify which application she was inquiring about.  Carol Walsh Dep. at 85.  Werkheiser claims that he believed Walsh was inquiring about her 2007 application for an Administrative Assistant

position.  Werkheiser Dep. at 41-48. During her conversations with Werkheiser, Werkheiser told

Walsh that he would need to look into whether CEDA had a nepotism policy that would

disqualify her on account of her marriage to Kevin.  Werkheiser Dep. at 36-39; Carol Walsh

Dep. at 86.  During these conversations, Walsh also indicated to Werkheiser that she would be

willing to get a commercial driver's license if necessary. Carol Walsh Dep. at 87.  Walsh called

CEDA several more times in the fall of 2008 to no avail.  Id. at 88-91.  Walsh then made no

further inquiries regarding the application except for approaching Werkheiser at a Super Bowl

party in early 2009.  At the party she told Werkheiser, "If I had a penis, I would have got the

job," to which Walsh claims Werkheiser responded by pursing his lips and nodding.  Carol

Walsh Dep. at 93-94.  Kevin also made several phone calls to Werkheiser during this period and

talked with Chris Morel, manager at Flint Hills.  Both expressed hesitation at hiring women for

field positions due to sexual harassment allegations by previous female field employees.  Kevin

Walsh Dep. at 48.

        CEDA generally considers applications for at least six months after the time they are

filed due to the high turn over and seasonal needs of its business.  Werkheiser Dep. at 17; see

also Voss Dep. at 15-16 (stating that application are kept for six months to a year).  During the

six months after Walsh claims to have submitted an application for General Laborer, CEDA

hired several men for the similar field position of Operator.  Shannon Aff. Ex. 16; Werkheiser

Dep. at 72-74; Pevito Dep. at 48; Voss Dep. at 12-13.  In January 2009, CEDA also hired Paul

Ellingson ("Ellingson") as a General Laborer.  Werkheiser Aff. ¶ 8.  Ellingson is male and not

married to a CEDA employee; he was previously employed by CEDA as a General Laborer but

was discharged due to attendance problems and his status had been listed as ineligible for rehire.

Werkheiser Dep. at 75-76 (stating reasons for termination); Shannon Aff. Ex. 11 (showing status as ineligible for rehire); Shannon Aff. Ex. 3 ¶ 29 Resp. (stating that Ellingson is not married to a CEDA employee).

Walsh filed this lawsuit in November 2009, alleging gender discrimination in violation of Title VII and the MHRA, and martial status discrimination in violation of the MHRA.  CEDA now moves for summary judgment, arguing that Walsh cannot establish a prima facie case of any type of discrimination because she never applied for a General Laborer position and no such position was open at the time she claims to have applied.  CEDA also argues that even if Walsh could establish a prima facie case of some form of discrimination, CEDA had legitimate, non-discriminatory reasons for hiring Ellingson and others.

## III.  DISCUSSION

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Gender Discrimination Claims**

Both Title VII and the MHRA prohibit discrimination in hiring based on gender.  42

U.S.C. § 2000e-2(a)(1); Minn. Stat. § 363A.08, subd. 2(1).  Claims under Title VII and the

MHRA are both analyzed under the McDonnell Douglas framework.  McDonnell Douglas v.

Green, 411 U.S. 792, 802-06 (1973) (articulating framework); Devin v. Schwan's Home Service,

Inc., 491 F.3d 778, 788-90 (8th Cir. 2007) (analyzing Title VII and MHRA gender

discrimination claims under McDonnell Douglas framework).  To establish a prima facie case of

gender discrimination in a failure to hire case, such as this, a plaintiff must show: "1) that she is

a member of a protected class; 2) that she applied and was qualified for a job for which the

employer was seeking applicants; 3) that she was rejected; and 4) that after rejecting plaintiff the

employer continued to seek applicants with plaintiff's qualifications."  Caviness v. Nucor-

Yamato Steel Co., 105 F.3d 1216, 1223 (8th Cir. 1997) (quoting Krenik v. County of Le Sueur,

47 F.3d 953, 957 (8th Cir. 1995)).  Once a plaintiff has established a prima facie case, the burden

shifts to the employer to articulate a legitimate, non-discriminatory reason for its action.

McDonnell Douglas, 411 U.S. at 802.  If the employer can do so, the burden then shifts back to

the plaintiff to show that the employer's proffered reason is pretext for discrimination.  Id. at

804.

**1.      Walsh can establish a prima facie case**

It is undisputed that Walsh as a woman is a member of a protected class and was

qualified for the General Laborer position.  Therefore, whether Walsh can establish a prima facie

case turns on whether she applied for an open position and was rejected.

      **a.**      **A genuine issue of material fact exists as to whether Walsh applied for General Laborer position**

CEDA argues that summary judgment is appropriate because no evidence exists that Walsh ever applied for a General Laborer position.  Specifically, CEDA argues that Werkheiser claims he never saw Walsh's application and Walsh has produced no evidence that he did. CEDA's position is unavailing as Walsh has produced evidence sufficient to create a genuine issue of material fact regarding whether she applied for a position.

First, Walsh has produced testimony that her application was turned in and delivered via internal mail to Werkheiser.  The chain of custody is established from Walsh to Kevin to Pevito at Flint Hills.  Only when the chain reaches Voss at Ham Lake does uncertainty become present. Voss claims that she received an application from Pevito, but her recollection is that the application was for an Administrative Assistant position.  Given that Walsh claims to have applied for the Administrative Assistant position on site at Flint Hills, and that Pevito claimed to have sent Voss the General Laborer application, it would be reasonable for a juror to find that Voss was mistaken as to which application she saw and that she in fact did give the General Laborer application to Werkheiser.

Further, a reasonable person could infer from the conversations between Werkheiser and Walsh regarding "her application" that Werkheiser knew that she was applying for a General Laborer position.  Walsh inquired about the status of her application, which was over a year old, but Werkheiser never inquired why she had such belated interest and never accounted why he still had the application despite CEDA policy to retain applications for six to twelve months. Walsh also relayed her willingness to work anywhere and obtain a commercial driver's license,

comments that are more relevant to an application for a General Laborer position.  Given these particular facts, a reasonable person could infer that Werkheiser knew of the General Laborer application.

> **b.** **A genuine issue of material fact exists as to whether a General Laborer position was open**

An employer may only be liable for failure to hire if a position was actually open.  When an applicant applies for a position, an employer is not bound to consider her application indefinitely.  See Williams v. Hevi-Duty Elec. Co., 819 F.2d 620, 626-29 (6th Cir. 1987) (holding employer not liable where it did not consider minority applicant pursuant to unwritten, internal policy that required applications be considered only for a period of one year).  An employer, however, must follow its own internal policies with respect to consideration of applicants.  Cf. id.; Roman v. ESB, Inc., 550 F.2d 1343, 1353 (4th Cir. 1976) (holding that thirty day consideration period for applications was not discriminatory where applied evenly to minority and non-minority applicants); see also Ward v. Von Maur, Inc., 574 F. Supp. 2d 959, 1000-01 (S.D. Iowa 2008) (ruling that genuine issue of material fact existed as to pretext where employer did not follow "normal practice" in considering application).

The parties vigorously contest whether the General Laborer position is equivalent to an Operator position as a practical matter.  Indeed, many men were hired for Operator positions while Walsh was seeking employment with CEDA.  The resolution of this debate is not dispositive, as a genuine issue of material fact remains as to whether Walsh should have been considered for the General Laborer position given to Ellingson.

It is undisputed that due to high turnover, CEDA accepts applications on a continual basis.  It is also undisputed that those applications are then retained for consideration for a period

of approximately six to twelve months.  Ellingson was hired for a General Laborer position at the end of January 2009, approximately six months after Walsh claims she applied for that position.  Therefore, sufficient evidence exists from which it could be reasonably inferred that the position given to Ellingson was open to Walsh and that she was rejected in favor of him.

> c.      **Legitimate nondiscriminatory reason**

Walsh has raised sufficient evidence to establish a prima facie case, and the burden shifts to CEDA to offer a legitimate, nondiscriminatory reason for its failure to hire her.  CEDA claims that its legitimate reason for hiring Ellingson instead of Walsh was that he had experience with CEDA as a former employee and therefore would require less training.

A reasonable person, however, could infer that the reason offered was mere pretext for discrimination.  There is evidence that Ellingson was previously terminated for attendance problems and was deemed ineligible for rehire.  CEDA employs no women in field positions.  CEDA employees expressed hesitation in hiring a women for a field position due to previous sexual harassment allegations.  Although subject to interpretation, Werkheiser may have endorsed Walsh's accusations of discrimination when confronted at the Super Bowl party.  Therefore, CEDA's motion for summary judgment on Walsh's gender discrimination claims under Title VII and the MHRA, Counts I and II of the Complaint, is denied.

## C.      **Marital Status Discrimination**

In addition to prohibiting employment discrimination based on gender, the MHRA prohibits employment discrimination based on marital status.  Minn. Stat. § 363A.08, subd. 2.  A claim for marital status discrimination follows the same burden shifting McDonnell Douglas analysis.  Freeman v. Ace Telephone Ass'n, 404 F. Supp. 2d 1127, 1136 (D. Minn. 2005) (citing

Gunnufson v. Onan Corp., 450 N.W.2d 625, 630 (Minn. Ct. App. 2001)).  A claim for marital status discrimination under the MHRA requires a showing that the discrimination was "directed at the marital status itself."  Kepler v. Kordel, Inc., 542 N.W.2d 645, 647 (Minn. Ct. App. 1996).  Marital status discrimination includes discrimination on the basis of the identity or situation of a spouse.  Taylor v. LSI Corp. of Am., 781 N.W.2d 912, 917 (Minn. Ct. App. 2010).

Walsh argues that she was denied a position with CEDA because her husband Kevin is an employee and supervisor with CEDA.  Her evidence of this discrimination was that Werkheiser told Walsh that he would have to inquire whether CEDA had a nepotism policy.  Walsh argues that Werkheiser could not have actually believed that there was a nepotism policy because siblings were already working and had in fact been hired by Werkheiser.  However, hiring siblings for equal positions and hiring a spouse of a current employee with a supervisory role are legally distinct scenarios.  Compare Kraft, Inc. v. State, 284 N.W.2d 386, 387-88 (Minn. 1979) (striking down anti-nepotism policy that prohibited full-time employment of two persons in the same household) with Belton-Kocher v. St. Paul School Dist., 610 N.W.2d 374, 376-77 (Minn. Ct. App. 2000) (upholding anti-nepotism policy that prohibited hiring a person that would be supervised by spouse).  Therefore, Werkheiser's concerns may have been legitimate and merely mentioning a desire to comply with a company policy is insufficient to raise a genuine issue of material fact that Werkheiser intended to discriminate against Walsh on the basis of her marital status.  CEDA is entitled to summary judgment on this claim, Count III of the Complaint.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  CEDA's Motion for Summary Judgment [Docket No. 16] is **GRANTED IN PART AND DENIED IN PART**; and

2.  Count III of the Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

BY THE COURT:


        s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 18, 2011.